UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOMINO'S PIZZA PMC,

                Plaintiff,

                              CIVIL CASE NO. 05-40305

v.

CARIBBEAN RHINO, et al.,             HONORABLE PAUL V. GADOLA
                                              U.S. DISTRICT COURT
                Defendants.
_____/

## ORDER

Plaintiff Domino's Pizza PMC, Inc. filed a complaint on September 30, 2005, for trademark infringement, alleging that Defendants Jeffrey Martineau, Caribbean Rhino, Inc., and Buy for Charity, LLC, used Plaintiff's trademarks to sell unauthorized "pizza cards" over the internet. Now before this Court is a motion filed on December 13, 2005 by Defendants Caribbean Rhino, Jeffrey Martineau, and Buy for Charity seeking dismissal for lack of personal jurisdiction, pursuant to Federal Rules of Civil Procedure 12(b)(2); dismissal for improper venue, pursuant to 28 U.S.C. § 1406; and, in the alternative, a transfer of venue to the Western District of Texas, Austin Division, pursuant to 28 U.S.C. § 1404.  Plaintiff filed a response to Defendants' motion on March 2, 2006, and Defendants filed a reply on March 10, 2006.  For the reasons stated below, this Court will deny Defendants motion.

**I.  FACTUAL BACKGROUND**

Plaintiff Domino's Pizza PMC ("Domino's") is a Michigan corporation, located in Ann Arbor, Michigan, with its principal place of business in Michigan.  Defendant Jeffrey Martineau

("Martineau") is an Alabama resident. Defendant Caribbean Rhino, a company started by Martineau, is an Alabama corporation and Defendant Buy for Charity, LLC ("Buy for Charity"), is a Texas limited liability company with its principal place of business in Austin, Texas. Defendant Martineau initially started the business related to the sale of allegedly infringing discount pizza cards, later incorporating as Caribbean Rhino, Inc. Martineau later sold the business assets of Caribbean Rhino to Defendant Buy for Charity who allegedly continued to use the name and trademark of Domino's Pizza, PMC. Plaintiff's complaint alleges trademark infringement and unfair competition pursuant to 15 U.S.C. §1051 *et seq.*, and specifically, 15 U.S.C. §§1114, 1117 and 1125(a) of the Lanham Act. The Court notes that subject matter jurisdiction is proper based upon the claims pursuant to 15 U.S.C. §1121, 28 U.S.C. §1331, and 28 U.S.C. §1338(a).

Defendant Martineau initially began his business by soliciting pizza franchisees by telephone and internet websites to participate in his pizza card program. Defendant used websites that allegedly displayed the Domino's name and logo to give the impression that the program was sponsored by the Domino's corporation. Defendant then negotiated and contracted with individual Domino's franchisees, including Michigan franchisees, to redeem the pizza cards at their individual stores. Not only did Defendant use the websites to solicit franchisees willing to participate in the program, he also used the websites to advertise and sell the pizza cards to various groups seeking to conduct fund-raising activities. These cards also prominently displayed the "Domino's Pizza" name and logo. The essence of the pizza card program was that the cards were offered for sale for three dollars each. The purchasers were then instructed to sell the cards to individuals in their community for ten dollars each, creating a seven-dollar per-card profit for the fund-raising group.

These pizza cards entitled the bearer to redeem the cards at participating locations for the discount that had been previously negotiated with Martineau, frequently offering a buy-one-get-one-free pizza deal.

Initially Martineau began the business on his own, contacting and negotiating with the franchisees to set up a network of participating locations. As the operation grew however, Defendant incorporated as Caribbean Rhino, Inc., an Alabama corporation. After continued growth, in April of 2005, Defendant Buy for Charity purchased the business assets of Caribbean Rhino. The sale of the pizza card business included the www.KrazyKard.com website used to market and sell the cards, the individual contracts negotiated with the franchisees, and the databases associated with the card sales. Buy for Charity continued to operate the pizza card scheme, marketing and selling the allegedly infringing cards on its website, www.buyforcharity.com, and others. In addition to selling the allegedly infringing cards, these websites allegedly displayed the Domino's name and trademark.

Defendants deny any trademark infringement and claim in their defense that they entered into written or oral contracts with approximately 800 Domino's franchisees. Those contracts, they argue, explicitly authorized Defendants to sell the pizza cards. Defendants claim that each contract with the Domino's franchisees was negotiated, drafted, and entered into from Defendants' offices in Austin, TX. Defendants further assert that all business transactions including sales, marketing and website maintenance occurred in Austin, Texas. Defendant does not clearly set forth whether, and if so, how, Alabama resident Martineau and Alabama corporation Caribbean Rhino, conducted these operations in Austin, Texas.

All Defendants now move to dismiss this action for lack of personal jurisdiction and improper venue. In the alternative, Defendants move to transfer the case to Austin, Texas "for the convenience of the parties and in the interest of justice." 28 U.S.C. §1404(a).

## II.   MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendants filed one motion and brief on behalf of all defendant parties. The motion and brief consistently intermingle arguments relating to dismissal for lack of personal jurisdiction and dismissal for lack of venue, without distinction. Additionally, although the arguments set forth in Defendants' motion initially appear to be asserting claims as to all defendants, the evidentiary support provided frequently relates to only Defendant Buy for Charity. While this Court need not take up arguments insufficiently developed or ambiguously asserted by counsel, in the interests of justice the Court will address the arguments in turn with respect to all defendants, first taking up the lack of personal jurisdiction claim, later turning to the lack of venue claim, and finally to the change of venue argument.

### A. Legal Standard

To establish personal jurisdiction, Plaintiff "must show that (1) the Michigan long-arm statute supports the Court's exercise of personal jurisdiction and (2) the exercise of jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment." *Viches v. MLT, Inc*., 127 F. Supp. 2d 828, 830 (E.D. Mich. 2000) (Gadola, J.). The standard for evaluating these requirements depends upon whether the Court conducts an evidentiary hearing on the jurisdictional issue. In this case, because the Court has not conducted an evidentiary hearing, the Plaintiff "need only make a prima facie showing of jurisdiction." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (citation

and internal quotation omitted).  Under this standard, the United States Court of Appeals for the Sixth Circuit has stated that the pleadings and affidavits should be considered in the light most favorable to the Plaintiff and has characterized Plaintiff's burden of establishing jurisdiction as "relatively slight."  *Welsh v. Gibbs,* 631 F.2d 436, 438-39 (6th Cir. 1980).

### A. Analysis

#### 1. The Michigan Long-Arm Statute Supports the Court's Exercise of Personal Jurisdiction

Using this "relatively slight" threshold standard, the Court will examine the first of the two requirements for establishing personal jurisdiction: whether the Michigan long-arm statute supports the Court's exercise of personal jurisdiction.  *See Viches*, 127 F. Supp. 2d at 830.  The Michigan long-arm statute permits limited personal jurisdiction over an individual or corporation, enabling the court to render personal judgments against the individual or corporation, when the cause of action arises out of the "transaction of any business within the state."  Mich. Comp. Laws §§ 600.705, 600.715.  This Court has previously noted that the standard of the Michigan long-arm statute is "extraordinarily easy to meet."  *Viches*, 127 F. Supp. 2d at 830  (Gadola, J.).  Indeed, the phrase, "any business within the state" has been very broadly interpreted.  The Sixth Circuit has held that where the defendant does even the "slightest act of business in Michigan," the first statutory criterion for personal jurisdiction under the Michigan long-arm statute is satisfied.  *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988)).

Martineau, as the former owner of Caribbean Rhino, has conducted significant business within the state of Michigan.  Martineau has admitted to personally soliciting Domino's franchisees

in Michigan, to registering the www.dominosfundraising.com and www.krazykard.com websites, and to controlling the websites's content. Pl. Resp., Ex. C. at nos. 3-14. These websites were used to sell allegedly infringing cards to Michigan residents that were intended to be redeemed at participating Michigan Domino's franchise locations. Considering Martineau's activities with respect to the interactive websites alone, the Court of Appeals for the Sixth Circuit has recognized that the operation of a website that allows residents of a state to purchase goods online, constitutes transacting business within the state for purposes of personal jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002) (A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.). As such, when Martineau created, controlled, and maintained the various interactive websites, used to solicit franchises to participate in the pizza card program and used to sell Michigan residents pizza cards that were meant to be redeemed in Michigan, he conducted business within the state of Michigan for purposes of the Michigan long arm statute. *See* Mich. Comp. Laws § 600.705; *Neogen Corp.*, 282 F.3d at 890.

Defendant Martineau denies that this Court can validly exercise jurisdiction over him. Martineau claims that he traveled to Michigan and solicited business as a corporate officer and not in an individual capacity. As such, Martineau asserts protection under the fiduciary shield doctrine:

> If an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct.

*Florists' Transworld Delivery, Inc. v. Fleurop-Interflora*, 261 F. Supp. 2d 837, 845 (E.D. Mich. 2003). But Defendant Martineau's argument is unavailing; the court in *Florists' Transworld*

6

*Delivery, Inc.*, expressly *rejected* the fiduciary shield doctrine. The court stated, "The U.S. Supreme Court, this Circuit and this District *reject* the proposition that the exercise of limited personal jurisdiction over the individually named Defendants in this matter should be precluded because the actions connecting them to Michigan were undertaken in an official rather than personal capacity." *Id.* (citing *Calder v. Jones*, 465 U.S. 783, 789(1984); *Balance Dynamics Corporation v. Schmitt Industries*, 204 F.3d 683, 697 (6th Cir.2000); and *Chicago Blower Corp. v. Air Systems Associates, Inc.*, 623 F. Supp. 798, 800 (E.D. Mich.1985)) (emphasis added). Furthermore, a search of the relevant case law of this Court reveals that this Court has previously held that "Michigan courts have not adopted the fiduciary shield doctrine, and due process does not command [a federal district court located in Michigan] to apply it in the absence of state law requirements." *McNic Oil & Gas Co. v. Ibex Resources Co.*, 23 F. Supp. 2d 729, 736 (E.D. Mich. 1998) (Gadola, J.) (quoting *Chicago Blower Corp. v. Air Sys. Assocs.*, 623 F. Supp. 798, 804 (E.D. Mich. 1985)). Consequently, Martineau's reliance on the fiduciary shield doctrine to prevent him from being subject to the personal jurisdiction of this Court is misplaced.

Turning to consider personal jurisdiction with respect to Defendants Caribbean Rhino and Buy for Charity, the Court first recognizes there is no dispute that they continued, if not sought to expand, the business Martineau established. At the time of the suit, it is alleged that more than 9,000 of the cards had been sold in Michigan with an estimated value of more than $25,000. Defendants Caribbean Rhino and Buy for Charity also continued to operate the various interactive websites used both to solicit franchises to participate in the program as well as to sell cards to Michigan residents. Applying then, the above analysis, both Defendants clearly surpass the "slightest act of business in

Michigan" threshold recognized by the Court of Appeals for the Sixth Circuit. *Lanier*, 843 F.2d at 906. Consequently, Defendants Caribbean Rhino and Buy for Charity, like Defendant Martineau, have conducted business within the state of Michigan for purposes of the Michigan long arm statute. *See* Mich. Comp. Laws §§ 600.705(1), 600.715(1).

## 2. The Exercise of Jurisdiction Would Not Violate the Due Process Clause of the Fourteenth Amendment

Even when jurisdiction is proper under the Michigan long-arm statute, the Court must next determine whether the exercise of personal jurisdiction complies with due process. As this Court has noted, "The Due Process Clause requires Plaintiff[] to show that Defendants have 'minimum contacts' with Michigan 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Viches*, 127 F. Supp. 2d at 830-31 (Gadola, J.) (quoting *Int'l Shoe Co. v. Washington.*, 326 U.S. 310, 316 (1945)). "Minimum contacts" exist when the defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being hauled into court there." *Youn v. Track Inc.*, 324 F.3d 409, 417 (6th Cir. 2003) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, (1980)). Moreover, the defendant must "purposefully avail [] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.*

Under the Due Process Clause, a court may exercise personal jurisdiction on either a "limited" or "general" basis. In the instant case, the Court need only examine the requirements of limited jurisdiction. "[L]imited jurisdiction exists when the cause of action at issue arises out of or relates to a defendant's contacts with the forum state, even if those contacts are isolated and

sporadic." *McGill*, 300 F. Supp. 2d at 504-05 (Gadola, J.).  The Sixth Circuit has established a three-part test for determining whether a court may exercise limited jurisdiction over a defendant:

> (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;" (2) "the cause of action must arise from the defendant's activities there;" and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

*Youn*, 324 F.3d at 418 (citing *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968)).  The Court will now examine these three elements in turn.

### a. Purposeful Availment

In the instant case, with respect to the first element, Defendants have purposefully availed themselves of the privileges of acting in Michigan.  The Sixth Circuit has held that "the operation of an internet website can constitute the purposeful availment of the privilege of acting in a forum state if the website is interactive to a degree that reveals specifically intended interaction with residents of the state."  *Neogen Corp.,* 282 F.3d at 890.  In *Neogen*, Michigan residents using a website were given a password that allowed them to then use the password to access a website to retrieve their genetic test results.  The Court in *Neogen* held that this interaction, combined with the efforts to welcome the individual business of Michigan residents on a regular basis, was sufficient to find that the defendant had purposely availed itself of the privileges of acting in Michigan.  *Id.* at 891.

Defendants' contacts with Michigan were at least as strong as those in *Neogen*.  Martineau solicited and negotiated contracts with Michigan franchisees, admitted selling pizza cards to customers in Michigan and also directed others in his company to do the same. Pl. Resp., Ex. C, nos.

19-26. Martineau created and controlled www.dominosfundraising.com and www.krazykard.com. These websites were later used by Defendants Caribbean Rhino and Buy for Charity. These websites were significantly more interactive than the websites that created the necessary purposeful availment in *Neogen.* Defendants' websites allowed Michigan franchises to obtain information and sign up to participate in the card program. Defendants' creation of a network of redeeming franchises within Michigan is further evidence that Defendants wished to purposefully avail themselves of the privilege of conducting activities within the state. *Youn*, 324 F.3d at 417. The websites also allowed Michigan residents to purchase the pizza cards online directly from Defendants. Consequently, this Court finds that all three Defendants "deliberately . . . engaged in significant activities within a State, or created continuing obligations between [themselves] and residents of the forum," satisfying the purposeful availment requirement. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (U.S. 1985).

      b.  Cause of Action Arising from Activities in the Forum

Regarding the second element, the Sixth Circuit has noted, "the 'arising from' requirement is satisfied if the cause of action is 'related to' or 'connected with' the defendant's forum contacts." *Campbell*, 347 F. Supp. 2d at 463-64. In the instant case, Plaintiff's cause of action arose from Defendants' agreements with Michigan Domino's franchisees and the resulting sale, via interactive websites, of the pizza cards to Michigan residents. Consequently, the Court finds that the Plaintiff's cause of action is directly related to Defendants' contacts with this forum.

      c.  Acts Have Substantial Enough Connection to Make Jurisdiction
        Reasonable

Regarding the third element, the Defendants' acts in Michigan were substantial enough to make the exercise of personal jurisdiction in Michigan reasonable. As detailed above, Defendant Martineau solicited business contracts with Michigan Domino's franchisees and provided an interactive website for Michigan consumers to purchase Domino's pizza cards. Defendants Caribbean Rhino and Buy for Charity advertised, marketed, and sold pizza cards in Michigan through interactive websites. Because these acts, which gave rise to the action now before this Court, all occurred in Michigan, there is a substantial connection between the acts giving rise to the action and this forum such that personal jurisdiction is reasonable.

After thorough consideration, this Court finds that the Sixth Circuit's three-part test for determining whether the Court may exercise limited jurisdiction over Defendants in accordance with Due Process is satisfied. Plaintiff has presented a prima facie case that Defendants have transacted business in the State of Michigan for the purpose of the Michigan long arm statute. Additionally, because Defendants "purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Viches*, 127 F. Supp. 2d at 830-31 (quoting *Int'l Shoe Co.*, 326 U.S. at 316), they created minimum contacts with Michigan such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (quoted in *Viches*, 127 F. Supp. 2d at 830-31.). Accordingly, the Court will deny Defendant's motion to dismiss the case for lack of personal jurisdiction.

### III. MOTION TO DISMISS FOR IMPROPER VENUE
#### A. Legal Standard

In suits such as this, not based solely on diversity jurisdiction, venue is controlled by 28 U.S.C. § 1391(b):

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). A consideration of venue may conclude that venue is proper in more than one judicial district. In the instant case, because Defendants are from different states, in particular Alabama and Texas, the court must examine more fully § 1391(B)(2) to determine if venue is proper in the Eastern District of Michigan.

In cases with multiple defendants, venue must be proper with respect to all defendants. *See IA, Inc. v. Thermacell Technologies, Inc.*, 983 F. Supp. 697, 700 (E.D. Mich.1997) (Gadola, J.). Once an objection to venue has been raised, Plaintiff bears the burden of establishing that venue is proper. *See French Transit Ltd. v. Modern Coupon Systems, Inc.*, 858 F.Supp. 22, 25 (S.D.N.Y.1994). The test for determining venue under section 1391(b)(2) depends on the location of the "events or omissions giving rise to the claim." 28 U.S.C. § 1391(b)(2). The relevant question regarding venue is "whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." *Setco Enterprises Corp. v. Robbins,* 19 F.3d 1278, 1281 (8th Cir. 1994)). The requirement of "substantiality" is to prevent the unfairness of a defendant being "hauled into a remote district having no real relationship to the dispute." *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994); *see Woodke v. Dahm*, 70

F.3d 983, 985 (8th Cir. 1995).

"Events or omissions giving rise to the claim," 28 U.S.C. § 1391(b)(2), may be present in actions under the Lanham Act in those districts where confusion about the origin of the product is likely to occur.  *See IA, Inc.*, 983 F. Supp. at 699-700.  The Court may look to whether a defendant has targeted the judicial district with advertisements and whether products were marketed and sold in that district.  *See Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000) (Gadola, J.) (citations omitted).

**B.  Analysis**

The question now before this Court is whether venue is proper in this judicial district. Because all Defendants do not reside in the same state, Defendant Martineau is a resident of Alabama, Caribbean Rhino is an Alabama corporation, and Buy for Charity is a Texas corporation, the Court examines the requirements of venue under § 1391(b)(2).

Section 1391(b)(2) provides that an action may be brought in a district "in which a substantial part of the events or omissions giving rise to the claim occurred. . . ."  In the instant case, Martineau admits to negotiating, signing, and entering into written agreements with Domino's franchisees located in the state of Michigan.  Pl. Resp., Ex C, nos.22-26.  He also admits that he registered, created, and maintained various websites that sold the pizza cards to Michigan residents. Pl. Resp., Ex C, nos. 1-7, 8-11, 13-14, 19-21.  Many of the participating franchise locations and the sales of the pizza cards in Michigan were, more specifically, within the Eastern District of

Michigan.[1]  Pl. Resp., Ex A, G.  Consequently, because these actions constitute a substantial part of the events giving rise to the Plaintiff's claim, venue in the Eastern District of Michigan is proper with respect to Defendant Martineau.  *See 28* U.S.C. § 1391(b)(2).

Turning to consider Defendants Caribbean Rhino and Buy for Charity, many of the actions that Martineau undertook with respect to setting up the business were done on behalf of Caribbean Rhino.  Pl. Resp., Ex C, nos.1-3, 5-7, 9, 11, 13-14, 19-26.  (Actions taken by Martineau on behalf of Caribbean Rhino include, but are not limited to creating agreements with the Domino's franchisees, establishing the interactive websites, and the selling of the pizza cards.).  The sum of Caribbean Rhino's business assets was then sold by Martineau to Buy for Charity.  *See* Pl. Resp., Ex B, Tr. of Martineau, pp. 60-61.  Buy for Charity then continued the relationships with more than fifty Domino's franchise locations within the Eastern District of Michigan,  *See* Pl. Resp., Ex. G, and continued to operate the websites that advertised and sold the allegedly infringing Domino's pizza cards.  These actions, taken by the Defendants Caribbean Rhino and Buy for Charity, are the events that allegedly caused confusion about the Domino's pizza card product and eventually gave rise to this cause of action.  *See IA, Inc.*, 983 F. Supp. at 699-700.  Consequently, the Court finds that the Eastern District of Michigan is a proper venue for this suit with respect to Defendants Caribbean Rhino and Buy for Charity.

---

[1]In this district, pizza cards were allegedly sold to residents of Farmington Hills, Ann Arbor, Grand Blanc, Detroit, Ypsilanti, Midland, Saginaw, Flint, Dearborn, and Birmingham, and other cities.  Participating franchises were located in Ann Arbor, Bay City, Berkley, Birmingham, Brighton, Burton, Canton, Clawson, Commerce Township, Davison, Dearborn, Detroit, Fenton, Flint, Grand Blanc, Grosse Pointe, Howell, Lake Orion, Lapeer, Lincoln Park, Livonia, Midland, Novi, Plymouth, Rochester, Saginaw, Saint Clair Shores, Southfield, Southgate, and Westland.  Each of these cities are within this district.

After a full consideration of Defendants' challenge as to whether venue is proper in this district, the Court finds that venue is proper in the Eastern District of Michigan with respect to all Defendants. Plaintiff has sufficiently demonstrated that the district chosen for this course of action has "a substantial connection to the claim." *Overland, Inc.*, 79 F. Supp. 2d at 811. Accordingly, because venue is proper in this district with respect to all Defendants, the Court will deny Defendant's motion to dismiss the action for improper venue.

## IV. MOTION TO TRANSFER VENUE

Defendants argue in the alternative to the previous claims, even if venue is proper in the Eastern District of Michigan, this civil action should be transferred to the Western District of Texas, Austin Division "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Defendants contend that "the balance of equities strongly favors the Defendants" and that it would be unfair and burdensome to hold the trial in Flint, Michigan. For the reasons stated below, the Court will deny Defendants' motion for change of venue.[2]

### A. Legal Standard

Courts have broad discretion to grant or deny a motion for transfer of venue under 1404(a). *Overland*, 79 F. Supp. 2d at 811 (Gadola, J.) (citing *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989)). Under § 1404(a), the Court may transfer a civil action to "any

---

[2] The Court notes that Defendants have improperly referred to their motion as a "Motion to Transfer for *Forum Non Conveniens.*" Def. Br., p. 12. "The doctrine of forum non conveniens applies only to cases in which the alternative forum is abroad." *Campbell v. Bridgeview Marina, Ltd.*, 347 F. Supp. 2d 458, 464 (E.D. Mich. 2004) (Gadola, J.) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996); *see also Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253 (1981).

other district or division where it might have been brought." 28 U.S.C. § 1404(a). Such a transfer may be granted "[f]or the convenience of parties and witnesses [and] in the interest of justice." *Id*. In making this decision, the Court must first determine: (1) whether the action could have been brought in the proposed transferee district, (2) whether a transfer would promote the interests of justice, and (3) whether a transfer would serve the parties' and witnesses' convenience. *United States v. P.J. Dick Inc.*, 79 F. Supp. 2d 803, 806 (E.D. Mich. 2000) (Gadola J.).

The moving party bears the burden of demonstrating that, in light of these factors, "fairness and practicality strongly favor the forum to which transfer is sought." *Thomas v. Home Depot U.S.A., Inc.*, 131 F. Supp. 2d 934, 936 (E.D. Mich. 2001) (quoting *Rowe v. Chrysler Corp.*, 520 F. Supp. 15, 16 (E.D. Mich. 1981)). The moving party must make this showing by a preponderance of the evidence. *Amphion Inc. v. Buckeye Elec. Co.*, 285 F. Supp. 2d 943 at 946-47 (Gadola, J.) (citing *Thomas*, 131 F. Supp. at 936; *Int'l Union, U.A.W. v. Aluminum Co. of Am.*, 875 F. Supp. 430, 433 (N.D. Ohio 1995)).

**B. Analysis**

Defendant asks this Court to transfer this litigation to the Western District of Texas, Austin Division, because litigation in Michigan would be a substantial burden for the four-employee Austin, Texas, Buy for Charity corporation. Before the Court examines whether fairness and practicality favor transfer to that district, this Court must first determine if the action could have been brought in that district. *See* 28 U.S.C. § 1404(a).

Although Defendants baldly assert that the action could have been brought in Austin, Texas, personal jurisdiction is essential to proving that a cause of action could have been brought in that

16

district. Defendants have failed to present any evidence that Alabama Defendants Martineau and Caribbean Rhino would be subject to personal jurisdiction in Texas. While Defendants argue that venue is proper in the Western District of Texas because Defendant *Buy for Charity* operated the allegedly infringing websites, negotiated and entered into written and oral contracts with Dominos's franchisees, and marketed, advertised, and sold the pizza cards from its Austin, Texas offices, Defendants did not present any evidence that Defendants Martineau and Caribbean Rhino performed any similar actions that would subject them to personal jurisdiction in Texas. While personal jurisdiction and venue may be proper in Texas with respect to Defendant Buy for Charity, to establish proper venue, venue must be proper for all defendants. *See IA, Inc.*, 983 F. Supp. at 700. Without such a showing, the Court cannot conclude that the action "could have been brought in the proposed transferee district." *P.J. Dick Inc*., 79 F. Supp. 2d at 806. Consequently, the Court must deny Defendants' motion for a transfer of venue.

Furthermore, even if this Court were to conclude that this action could have been brought in the Western District of Texas, Defendants also failed to carry their burden of establishing that a transfer would promote the interests of justice and would serve the parties' and witnesses' convenience. *Id.* at 806. *See also Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000) (Gadola, J.) (setting forth the nine factors this Court considers when determining if a transfer of venue is appropriate). In particular, although Defendants contend that Michigan litigation would be significantly burdensome to Buy for Charity due to the company's small size and limited budget, Defendants' motion is silent as to the relative convenience of litigation in Texas, rather than in Michigan, for Alabama Defendants Martineau and Caribbean Rhino. Defendants do not assert any

claims that Defendants Martineau and Caribbean Rhino, or their witnesses, will be significantly burdened by litigation in Michigan. Therefore, this Court having fully considered all the factors and evidence before it regarding Defendants' motion for change of venue, the Court concludes that even if Defendants had demonstrated that venue was appropriate in the Western District of Texas, Defendants have not met the burden of demonstrating that such a transfer would "promote the interests of justice and serve the parties' and witnesses' convenience." *P.J. Dick, Inc.*, 79 F. Supp. 2d at 806.

## V.     CONCLUSION

Accordingly, for the aforementioned reasons, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss for lack of personal jurisdiction, for lack of venue, and in the alternative, for a change of venue, is **DENIED.**

**SO ORDERED.**

Dated:   September 13, 2006                                s/Paul V. Gadola
                                                          HONORABLE PAUL V. GADOLA
                                                          UNITED STATES DISTRICT JUDGE

Certificate of Service

I hereby certify that on   September 14, 2006   , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
   Frank A. Angileri; Thomas W. Cunningham; Elizabeth F. Janda; John A. Stevens   , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                                                                                           .

                                                                           s/Ruth A. Brissaud                              
                                                                           Ruth A. Brissaud, Case Manager
                                                                           (810) 341-7845